# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **JOHN TATUM** | **CASE NO.  6:20-0625** |
| **VERSUS** | **JUDGE JUNEAU** |
| **U. S. COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### ADMINISTRATIVE PROCEEDINGS

On May 26, 2015, the claimant filed an application for DIB and SSI benefits, alleging an onset date of July 1, 2013.  By letter dated August 10, 2015, the claimant was notified his applications for DIB benefits and SSI benefits were denied.  On September 25, 2015, the claimant requested review by an ALJ, and a hearing was held on October 11, 2017 before ALJ Lawrence Ragona.  On February 7, 2018, the ALJ issued an unfavorable decision.  By letter dated October 31, 2018, the Appeals Council denied review.  A complaint was filed in this Court and the matter was adjudicated by Magistrate Judge Hanna.  Ruling on the briefs, Judge Hanna reversed

the decision of the Commissioner and remanded back to the ALJ to again ascertain the claimant's residual functional capacity ("RFC") and to determine whether the claimant satisfied the requirements of Listing 1.02 before the date he was last insured for DIB benefits (March 31, 2016).

A second hearing was held before ALJ Ragona on February 12, 2020, and Judge Ragona issued a partially favorable decision on March 4, 2020, granting the claimant SSI benefits, but denying him DIB benefits.  The claimant then filed this action seeking review of the Commissioner's decision.

### SUMMARY OF PERTINENT FACTS

The claimant was 45 years old at the time he filed his applications for DIB and SSI benefits.  By the time of the first administrative hearing, he was 49 years old.  By brief dated October 5, 2017, the claimant amended his alleged onset date to April 15, 2015, when he was 45 years old, or a younger individual (age 45-49), pursuant to 20 C.F.R. 416.963.  The claimant alleges he is disabled due to bad knees, a shoulder that pops out of socket, and a right ankle that rolls and causes him to fall. The claimant has a 10th grade education and has worked as a derrick man, roughneck, floor man, and assistant driller, and has had consistent earnings from 1988 through 2013.

The claimant's comprehensive medical history was set forth in Magistrate Judge Hanna's Report and Recommendation dated August 15, 2019.  *See Tatum v.*

*U.S. Commissioner, Social Security Administration*, Civil Action No. 18-1648, Doc. 19. That medical history is referenced and adopted herein.

## ANALYSIS

### A.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[1] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[3]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[4] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[5] Conflicts in the evidence and credibility assessments are for the Commissioner to

---

[1] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).
[2] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).
[3] *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).
[4] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[5] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

resolve, not the courts.[6]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[7]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[8]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[9]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[10]  A claimant shall be determined to be disabled only if his physical or mental impairment

---

[6] *Martinez v. Chater*, 64 F.3d at 174.
[7] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.
[8] See 42 U.S.C. § 423(a).
[9] 42 U.S.C. § 1382(a)(1) & (2).
[10] 42 U.S.C. § 1382c(a)(3)(A).

or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[11]

## C.    **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[12]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[13]

---

[11] 42 U.S.C. § 1382c(a)(3)(B).

[12] 20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[13] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[14] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[15] The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[16]

The claimant bears the burden of proof on the first four steps.[17] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[18] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[19] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[20] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[21]

---

[14] 20 C.F.R. § 404.1520(a)(4).
[15] 20 C.F.R. § 404.1545(a)(1).
[16] 20 C.F.R. § 404.1520(e).
[17] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[18] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[19] *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).
[20] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[21] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

### D.    THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ found that the claimant meets the insured status requirements of the SSA through March 31, 2016.[22]

At step one, the ALJ found that the claimant has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date.[23]

At step two, the ALJ found that the claimant has the following severe impairments: degenerative joint disease and internal derangement requiring surgery on the left knee, with residual effects; and degenerative changes with ligamental/meniscal injury in the right knee.[24]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[25]  The claimant challenges this finding.

At step four, the ALJ found that, beginning on September 29, 2019, the date the claimant's age category changed, considering his age, education, work experience, and residual functional capacity, there are not jobs that exist in significant numbers in the national economy that the claimant could perform. However, the ALJ found that the claimant was not disabled prior to September 29,

---

[22] Tr. 947.
[23] *Id.*
[24] *Id.*
[25] Tr. 949.

2019 but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. The ALJ further found that the claimant was not disabled at any time through March 31, 2016, the date last insured. Rather, the ALJ found that although the claimant was unable to do any past relevant work from the alleged onset date to March 31, 2016, he had the residual functional capacity to perform certain jobs within the category of sedentary work, and there were significant jobs in the national economy during that time period.[26] Thus, the claimant was awarded SSI benefits but denied DIB benefits.

E.    **ANALYSIS OF ALLEGED ERRORS**

The claimant alleges the following errors by the ALJ:

1. The ALJ failed to properly apply controlling law in evaluating the treating source medical opinion of Dr. Michael Wayne Britt, MD as relayed by Christine Staires, MD, and thus the ALJ's evaluation of the medical opinion evidence and corresponding RFC are not supported by substantial evidence.

2. The ALJ failed to properly apply controlling law in assessing the claimant's RFC; the RFC assessment does not address whether the claimant can perform the demands of work on a regular and continuing basis, the ALJ failed to call a VE to opine on the claimant's ability to perform work on a regular and continuing basis, the ALJ found the claimant had restrictions that did not allow for the full range of sedentary work despite the RFC finding of such, and therefore the ALJ's RFC assessment is not supported by substantial evidence.

---

[26] Tr. 24, 27.

3. The ALJ failed to find the claimant met the listing of 1.02 due to his inability to ambulate effectively before the date he was last insured, March 31, 2016.

The undersigned will address each argument in turn.

## 1. Improper application of law in evaluation of treating source opinion

The claimant argues that Dr. Christine Stairs, on behalf of Dr. Michael Wayne

Britt, wrote a report on July 21, 2017, wherein she stated the following:

> John Tatum was seen and examined in clinic and at this time should be considered disabled due to his current level of pain and limitations in function and has been unable to work since 2010. Today his swelling has diminished but [] has severe medial joint line tenderness. His xrays continue to show progression of his degenerative changes which was consistent with arthroscopic findings. He was recommended for Supartz injections, however this was not approved by Medicaid. At some point in the future he will be able to return to light duty, however at this time he is not functionally able to work. He is currently undergoing treatment for his right knee pain and will likely not be able to return to work within the next year.[27]

In his Decision, Judge Ragona addressed this report as follows:

> In July 2017 [claimant's] doctors furnished medical source statements that the claimant was not functionally able to do work, but that at some point in the future he would be able to return to light duty. He also had been unable to work since 2010 due to pain and limitations in function[] and would likely not be able to return to work within the year. Although these opinions were from treating sources, one indicated that the claimant's swelling had diminished and that x-rays continued to show progression of the degenerative changes consistent with arthroscopic findings. The other doctor had previously noted that the claimant ambulated with a limp but without assistive devices. In any event, these opinions are conclusory and outside the scope of permissible opinion

---

[27] Tr. 780.

evidence since the ability to work is an ultimate issue reserved to the Commissioner of Social Security. For these reasons I find these opinions unpersuasive.

On the other hand, the DDS medical consultant concluded that the claimant could perform a limited range of sedentary exertional work activity. I find this medical source statement generally persuasive and consistent with the extant evidence at the time, as well as with later-adduced evidence of ongoing knee problems.[28]

The claimant contends that the ALJ erred in failing to apply controlling law in evaluating the opinions of Dr. Christine Stairs in evaluating the claimant's residual functional capacity. Dr. Stairs is the claimant's treating physicians at University Health-Shreveport. Although Dr. Stairs supported her opinion with references to medical evidence including swelling, severe medial joint line tenderness, and x-rays showing progression of degenerative changes consistent with arthroscopic findings, she did not identify or describe the functional limitations resulting from the condition of the claimant's right knee. Dr. Stairs did not mention the claimant's left knee at all.

The Social Security regulations and rulings explain how medical opinions are to be weighed.[29] The ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record. Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment

---

[28] Tr. 954-55.
[29] 20 C.F.R. §§404.1527(c), 416.927(c), SSR 96-2p, SSR 96-5p.

will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with. . . other substantial evidence."[30]  While the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion,[31] the ALJ cannot reject a medical opinion without an explanation supported by good cause.[32]  However, the ALJ has sole responsibility for determining the claimant's disability status.[33]  Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[34]  In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[35]  If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little or no weight – but only after showing good cause for doing so.[36]  Good cause may be shown if the treating physician's opinion is conclusory, unsupported by

---

[30] 20 C.F.R. § 404.1527(d)(2).

[31] *Martinez v. Chater*, 64 F.3d at 176.

[32] *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (citations omitted).

[33] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[34] *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), *citing Newton v. Apfel*, 209 F.3d at 455.

[35] 20 C.F.R. ' 404.1527(c)(2). See, also, *Loza v. Apfel*, 219 F.3d at 393.

[36] *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-44 (5th Cir. 2009).

medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[37]

Here, the ALJ gave little weight to the opinions of the claimant's treating physicians on the basis that they are "conclusory and not within the scope of what a physician decides, as the ability to work is an issue reserved to the Commissioner." The claimant argues that the ALJ erred in failing to give controlling weight to the treating physicians' opinions.

As an initial matter, the Commissioner argues that the statement of Dr. Stairs is not a medical opinion at all, because it doesn't provide the information required by 20 C.F.R. §404.1527(a)(1), which states:

a) Definitions.

(1) Medical opinions. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

*See Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017) (regulation cited therein). The Commissioner argues that because the treating physician's statement did not address what the claimant can still do and did not address his residual functional capacity, the statement is not a medical opinion at all.

---

[37] *Id.*

Regardless of whether the Dr. Stairs's letter is properly considered a medical opinion, the undersigned concludes – as did Magistrate Judge Hanna when he was presented with the issue -- that the opinions set forth in Dr. Stairs's letter of July 21, 2017 are conclusory.  While Dr. Stairs stated that the condition of the claimant's right knee negatively impacted his functionality, she did not explain the basis for that conclusion, nor did she provide opinions regarding how long the claimant is capable of sitting, standing, or walking.  She did not provide opinions regarding whether the pain caused by the claimant's knee condition or the medications he takes for pain affect his ability to focus or concentrate.  She did not provide opinions regarding whether the claimant's use of assistive devices to aid in ambulation affects the use of his arms or hands or how much weight he can lift or carry.  She did not provide opinions regarding whether the claimant is limited in his ability to stoop, kneel, crouch, or crawl.  A doctor's opinion on the ultimate question of whether a claimant is disabled is not entitled to any weight at all; instead, whether a claimant is disabled is a determination reserved to the Commissioner.

Because the ALJ correctly found that Dr. Stairs's letter lacks the required findings and support for her opinions, the undersigned finds that the Commissioner did not err in failing to give the opinions of Dr. Stairs controlling weight.

## 2. Listing 1.02

The claimant argues that the ALJ erred in finding that he doesn't meet the requirements of Listing 1.02 due to his inability to ambulate effectively before March 31, 2016.  Judge Hanna remanded this matter back to the ALJ to further consider this issue.

On remand, the ALJ specifically addressed the findings of Magistrate Judge Hanna and found as follows:

> In brief during the previous proceeding, counsel for the claimant asserted that the claimant was unable to walk at a normal pace, regularly required a cane, and had trouble navigating steps.  The claimant alleged that he sometimes used crutches but used a cane all the time although it was not prescribed by a doctor.  He was observed walking with crutches on March 17, 2014.  He had been advised to use a knee immobilizer with crutches for ambulation in April 2015, and was apparently still on crutches a year later.  However, in July 2016 the claimant was observed to walk normally without assistive devices but with a limp, although he carried a cane and crutches if needed.  The claimant reported periodically from August 2015 to late in 2019 that he was mowing his lawn as well as the lawns of others for pay, and also more recently denied the need for, or use of, any assistive device for ambulation.

> The district court in its decision felt that more attention needed to be paid to whether or not the claimant's history of knee impairments resulted in the overall inability to ambulate effectively such that listing-level severity might be reached.  The magistrate judge cited several examples from the evidentiary record as possible indicators of such an inability.  He noted separate dates in 2014 and 2015, and 2016 when it was "*undisputed that, on those particular occasions, the claimant was unable to ambulate effectively*."  He also referenced a treatment noted from July 28, 2016 indicating that the claimant normally walks without assistive decides but with a limp, and has a cane and crutches that he can use if needed.

On these points I emphasize that the record is certainly not "undisputed" in that it is nowhere clear that the claimant actually *required* the use of two crutches, a cane, or some combination of these for ambulation at any particular time. Moreover, even if it did, three such isolated instances does not, without more, meet the "duration" requirement (mentioned above) for purposes of a disability determination. The same is true regarding the magistrate judge's remark that the ALJ did not evaluate how the use of such devices might impact the claimant's ability to walk effectively. While it undoubtedly could be argued that during the time period when the claimant actually was using such devices, he was unable to ambulate effectively, again there is a duration threshold which must be crossed in order for a listing analysis to fly. The record fails to support the conclusion that this requirement was met, given the ample evidence . . . of many occasions when the claimant by his own admission did not need, or use, such assistive devices for ambulation. These factors fall well short of meeting or equaling the listing.

Additionally, the magistrate judge noted that the previous decision did not mention that the claimant's attempt to mow his yard in August 2015 resulted in a knee injury, an inability to bear weight on his right leg, and the use of a hinged knee brace; that a March 24, 2017 treatment note from University Health-Shreveport stated that the claimant "*normally walks with assistive devices;*" that there was a presumed need for the claimant to carry crutches and/or a cane with him (but not necessarily to use them), and that the ALJ failed to mention the numerous references in the record to the claimant's knees having buckled or given out, causing him to fall. On these points, however, a closer review of the cited examples in context reveal that these were *allegations* made by the claimant. There were not *clinical findings*, nor were they (except in the case of the knee brace) *prescription treatment* directed by treating sources.

Therefore, the claimant appears capable of both performing fine and gross motor movements effectively, as well as ambulating effectively, sufficiently to remove any doubt regarding listing applicability. For the

above reasons none of the claimant's orthopedic conditions, alone or in combination, have met or equaled a listing.[38]

The claimant argues that prior to September 29, 2019, his impairment satisfied Listing 1.02A, which requires the inability to ambulate effectively, as defined in 1.00B2b.[39] 20 C.F.R. pt. 404, subpt. P, app. 1, §1.02A (2020). As the ALJ pointed out, the "inability to ambulate effectively" is defined as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both upper extremities.*"[40] 20 C.F.R. part 404, subpt. P, 14 app. 1, § 1.00B2b(1) (2020) (emphasis added). Listing-level ineffective ambulation includes the inability to walk without the use of a walker, two canes, or two crutches. 20 C.F.R. part 404, subpt. P, app. 1, §1.00B(2)(b)(2) (2020).

It is well-settled that, at step three of the sequential evaluation process, the burden remains on the claimant to establish that his impairment meets or equals an impairment enumerated in the listings, not upon the Commissioner to prove that the claimant does not satisfy a listing. *See, e.g. Carey v. Apfel*, 230 F.3d 131, 135 (5th

---

[38] Tr. 949-50 (emphasis in original).

[39] The Listings have been revised to address the Covid-19 pandemic. However, courts should review an ALJ's decision under the rules in effect at the time of the ALJ's decision. *See, e.g., Sierra Medical Center v. Sullivan*, 902 F.2d 388, 392 (5th Cir. 1990) ("Generally courts will not apply regulations retroactively unless their language so requires"); *Muse*, 925 F.2d at 790 (court looked to the regulations in effect at time of the ALJ's decision). For that reasons, the Court cites to the version of the relevant listings that was in effect at the time of the March 2020 ALJ's decision at issue here.

[40] Tr. 949.

Cir. 2000); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F.R. §§404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Here, with respect to the issue of ambulation, the ALJ noted that an emergency room nurse observed the claimant using crutches on March 17, 2014; a nurse practitioner observed the claimant using crutches on April 2, 2015; and an emergency room nurse observed the claimant using crutches on May 11, 2016.[41] However, the ALJ emphasized these three occasions fail to show that the claimant was *required* to use two crutches, or that they had ever been prescribed by a doctor.[42] *See* 20 C.F.R. pt. 404, subpt. P, app. 1§ 1.00(J)(4) (2020) (indicating that a documented medical basis for the use of an assistive device is necessary to establish that the assistive device is medically required). The ALJ also pointed out that "three such isolated instances does not, without more, meet the 'duration' requirement (mentioned above) for purposes of a disability determination," or show that the claimant required the use of two crutches continuously for twelve consecutive months.[43] *See Barnhart v. Walton*, 535 U.S. 212, 215-219 (2002) (the inability to work must coexist with the impairment for a period of twelve months before a decision-maker can find a claimant disabled); *see also* 20 C.F.R. part 404, subpt. P, app. 1, §1.00B2(a) (2020) (the inability to ambulate effectively "must have lasted,

---

[41] Tr. 24, 321, 599, 601, 660, 945, 949-50, 952, 1050-51.
[42] Tr. 950.
[43] Tr. 945, 948-50.

17

or be expected to last, for at last 12 months"). Therefore, Plaintiff has failed to establish listing-level ineffective ambulation. *See* 20 C.F.R. part 404, subpt. P, app. 1, §1.00B2b(1) (2020).

With respect to the August 2015 lawn-moving incident, the ALJ considered medical evidence related to the claimant's report that he "blew his knee out" while mowing, and he was unable to weight bear on the right.[44] After this incident, the claimant went to University Hospital and was examined by Dr. Brian T. Perry, who prescribed a hinged knee brace and advised the claimant to avoid weight-bearing on the right.[45] However, even with a knee brace, there is no evidence that the claimant's upper-extremity functioning was limited by the use of hand-held assistive devices. *See* 20 C.F.R. part 404, subpt. P, app. 1, §1.00B2b(1) (2020).

Finally, the ALJ referenced and considered a March 24, 2017 University Health-Shreveport treatment note showing that the claimant reported he normally walks with assistive devices, he wore braces bilaterally due to instability, and he had a cane and crutches that he could use if needed.[46] The ALJ also acknowledged "numerous references in the record to the claimant's knees having buckled or given out, causing him to fall."[47] However, the ALJ emphasized that this evidence

---

[44] Tr. 383-88, 950, 952, 1051.
[45] Tr. 383, 950, 952.
[46] Tr. 764-65, 950, 953.
[47] Tr. 44, 256, 321, 374, 380, 412-13, 422, 761, 950-53, 978-79, 1051.

consisted of the claimant's *own allegations* in the documentary evidence or self-reports to medical professionals.[48]    The ALJ pointed out that the step three determination is based on objective clinical findings, and not a claimant's allegations and self-reports to medical professionals.    According to the regulations, clinical examinations should be done with and without the use of the hand-held assistive device to determine whether, or the extent to which, an individual is able to ambulate without assistance. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §1.00(J)(4) (2020). Here, the claimant failed to identify any examination where this was done, or any other objective medical basis to establish listing-level ineffective ambulation. *See* 20 C.F.R. part 404, subpt. P, app. 1, § 1.00B2b(1) (2020). *See* Doc. 13 at 6-30.

Considering the foregoing, the undersigned finds that the claimant fails to satisfy the requirements of a listed impairment, and the ALJ's finding that the claimant did not meet a listing is supported by substantial evidence in the record.

**RFC Assessment**

The claimant argues that the ALJ failed to properly apply controlling law in assessing the claimant's RFC because: (1) the RFC assessment does not address whether the claimant can perform the demands of work on a regular and continuing basis; (2) the ALJ failed to call a VE to opine on the claimant's ability to perform work on a regular and continuing basis; and (3) ALJ found the claimant had

---

[48] Tr. 44, 256, 321, 374, 380, 412-13, 422, 761, 951-53, 978-79.

restrictions that did not allow for the full range of sedentary work despite the RFC finding of such.

The ALJ found that prior to the established disability onset date, the claimant was a younger individual, age 45-49, but that on September 29, 2019, the claimants' age category changed to an "individual closely approaching advanced age." The ALJ found that the claimant was not disabled prior to September 29, 2019, but that beginning on September 29, 2019, the claimant was not able to transfer job skills to other occupations at the sedentary level. Thus, the ALJ found that the claimant was not capable of performing the full range of sedentary work. However, the ALJ determined that prior to September 29, 2019, considering the claimant's age, education, work experience, and RFC, there are jobs that existed in the national economy that the claimant could have performed. The VE testified that given the foregoing, the claimant would have been able to perform the requirements of representative occupations, such as document preparer and surveillance system monitor. Thus, the ALJ determined that prior to September 29, 2019, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Because of this, the ALJ concluded that the claimant was not entitled to DIB prior to September 29, 2019.

At the hearing on February 12, 2020, the ALJ asked the VE to consider a hypothetical claimant who could lift and carry ten pounds occasionally, five pounds

frequently, stand and walk for about two hours, sit for six hours, and who could not exposed to concentrated hazards such as unprotected heights or dangerous machinery. Jobs existed for such a hypothetical individual.[49] When the ALJ added the further limitations that the individual would have episodes where his knee pain would be exacerbated, to the point that he couldn't concentrate or do one or two-step instructions, or maintain and eight-hour workday – for three or four days in a month, and these days would be unpredictable – the VE testified that there would be no work for such an individual.[50]

The claimant argues that the further limitations added by the ALJ – and considered by the VE -- were proper, and that these limitations are supported by the evidence in the record and the claimant's subjective complaints. In support of his argument, the claimant refers to his episodes of falling, and "imaging reports confirming and corroborating the significant degeneration of his knees." However, the ALJ subsequently found that these limitations were not supported by objective evidence. The ALJ noted that although the claimant clearly has knee impairments, there is countervailing evidence in the record to suggest that the claimant never completely lost the ability to perform a minimal level of exertional activity, such as

---

[49] Doc. 1001.
[50] Doc. 1001-01.

that which might be performed primarily in a sitting position and not requiring much

in the way of walking, lifting, or carrying.  As the ALJ noted:

> Several factors weigh in this conclusion.  For example, in July 2014, he reported taking pain medication only periodically and, more recently, taking none at all.  He also left against medical advice after seeing a health care provider, and it was noted in 2015 that he had missed three appointments at this orthopedic clinic.  There are ample reports noted above regarding his exertional activity such as moving lawns (his own as well as others).  The various surgical procedures he has had have apparently provided ongoing benefit, such that he ultimately reported the ability to walk without assistive devices, and to engage in more than minimal exertional activity such as running and playing with his dog.[51]

> The regulations define "sedentary work" as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567(a).

Here, the claimant is relying on VE testimony based on questions containing

limitations the ALJ did not adopt, such as "being off task 20% of the day" and the

inability to concentrate to perform one-or-two-step instructions (Tr. 1001-03).  The

ALJ was not bound by the VE's responses to questions based on assumptions

subsequently found unsupported by the overall record.  *Owens v. Heckler*, 770 F.2d

---

[51] Tr. 955.

1276, 1282 (5th Cir. 1985).  Considering the foregoing, the claimant has failed to rebut the ALJ's finding at step five that prior to September 29, 2019, he could make a successful adjustment to other work that exists in significant numbers in the national economy.  *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (explaining that once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding).

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned finds that substantial evidence of record supports the ALJ's March 9, 2020 decision.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by

Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 10th day of August, 2021.

Carol B. Whitehurst
United States Magistrate Judge